## MYERS *against* HARVEY.

Personal property purchased at a sale by the sheriff, and left in the possession of the defendant, under a lease from the purchaser, is not subject to be sold again as the property of the same defendant, to satisfy a debt which was due at the time of the first sale.

Error to the Common Pleas of *Centre* county.

This was an action of replevin, in which *Nathan Harvey* and *Co.* were plaintiffs, and *John M. Myers* was defendant.

The material facts which gave rise to the question of law in this case, were these. *John M. Myers* being indebted, his personal property consisting of horses, wagon, ploughs, &c. and grain growing in the ground, was levied upon a *fi. fa.* in favor of *Joseph W. Williamson*, and was on the 10th June, 1825, sold by the sheriff, and purchased by *Nathan Harvey* and *Co.* the plaintiffs, under these circumstances. *Myers* requested *Harvey* and *Co.* to attend the sheriff's sale and buy the property, saying at the same time, that if he got liberty to cut the grain, the proceeds of the sale of it would pay the amount for which the whole property would sell. A member of the firm attended, and bought in all the property: he then executed a written lease of it to *Myers*, and left it in his possession. He also took *Myers'* note for the amount, with the understanding, that it should be given to *Fidler*, the father-in-law of

(Myers *v.* Harvey.)

*Myers,* if he would undertake to pay *Harvey* and *Co.* the money. *Fidler* refused to pay the money. The following harvest *Harvey* and *Co.* paid the hands for cutting the crop: they received the grain and gave *Myers* credit for it. *Myers* had occasion for some small advances, which he received from the store of *Harvey* and *Co.* Upon settlement in October, 1826, *Myers* was still in debt to *Harvey* and *Co.* who considered the property as theirs, until their debt was paid.

Previously to this transaction *Myers* was also indebted to *John McGhee,* who obtained a judgment against him, and issued a *fi. fa.* to November term, 1826, upon which the sheriff levied the same property in the possession of *Myers,* which had been purchased by *Harvey* and *Co.* On the 9th November, 1826, the property was again sold and purchased by *McGhee.* And the question in this case was, whether *Harvey* and *Co.* or *McGhee* were entitled to the property.

The court below, *(Burnside* president) was of opinion, that under all the circumstances, the plaintiffs were entitled to recover, and so instructed the jury: and to the following points put by defendant's counsel thus answered:

1. That if the jury find the facts in this case to be, that the property in dispute was left in the hands of *Myers,* for seventeen months after the date of the sheriff's sale; that it is *per se* evidence of fraud as respects a judgment-creditor, and in point of law, the plaintiffs cannot recover.

To the 1st point the court answered; that the leaving of the property after a fair purchase at sheriff's sale for seventeen months, in the hands of the debtor is not *per se* evidence of fraud, as respects the judgment creditor, whose judgment was prior to that sale.

2. That the taking of a judgment note on settlement, from *Myers,* for the balance due to *Harvey* and *Co.* and retaining that note, in their possession up to the trial of the cause, was in point of law, an extinguishment of the lease, so far as it respected creditors; and left the property subject to execution creditors in the hands of *John M. Myers.*

To the 2nd point the court answered: This point is fully answered in the charge. We said under the evidence that if the jury believed, that the taking of the judgment-note was as stated by the witness, the taking of it, and the retaining it in possession up to the trial of the cause, is not in point of law, an extinguishment of the lease, so far as respected *McGhee,* and the property was not legally subject to his execution.

3. That if the jury find that *Harvey* and *Co.* blended the sale and lease of *John M. Myers'* property with other dealings and transactions, and received payments and made a settlement as of

61

(Myers v. Harvey.)

one general account, and took a note for the balance, it is an extinguishment of the lease, and the plaintiffs would not be entitled to recover.

To the 3d point the court answered:   This point is already answered; the court do not think that the blending in this case as proved, and the facts as submitted to the jury, with other transactions, nor the payments as proved, nor the settlement made, nor the taking of the note under the facts disclosed for the balance, is an extinguishment of the lease, nor will we say to you that the plaintiffs are not entitled to recover.

4. That the plaintiffs' leasing the property to *Myers*, by which they were to receive a compensation for the use of it, takes this case out of the exception, that a purchaser at sheriff's sale may, out of humanity, leave the property in the hands of the former owner; and is of itself a fraud in law, and will bar the plaintiffs' recovery.

The 4th point is already answered:   The court do not think that the compensation for the use of the property, takes this case out of the exception, that a purchaser at sheriff's sale, may out of humanity, leave the property in the hands of the former owner, and it is not itself a fraud, and will not bar the plaintiffs' recovery.

5. If the jury believe that *Harvey* and *Co.* from the first of June, 1825, until 16th October, 1826, received from *Myers*, the amount of $170, the plaintiffs are not entitled to recover.

To the 5th point the court answered: That if *Harvey* and *Co.* have received their debt, the plaintiffs cannot recover.   They received the grain—they credited it at the net proceeds without regard to the sale—that credit did not amount as proved to $170, of which the jury are the judges.   This court do not think that the advances to cut the harvest, will destroy the plaintiffs lien on the other goods, under the facts disclosed and proved in this case.   The court have already given an opinion as to the $13 and the $20.   If the jury are of opinion that the plaintiffs have received their debt, except these two items, the plaintiffs are not entitled to recover.   You have heard *McCormick's* evidence, that after the sale of all the property, and applying it to the purchase of the property, and the advances to cut the grain, they will still lose between 40 and 50 dollars by this transaction.

. The errors assigned were to the answers of the court.

*Blanchard* for plaintiff in error,

Cited *Clow* v. *Woods*, 5 *Serg. & Rawle*, 273.   *Cunningham* v. *Neville*, 10 *Serg. & Rawle*, 201.   *Babb* v. *Clemson*, *Ib.* 419. *Cameron* v. *Montgomery*, 13 *Serg. & Rawle*, 128.   *Martin* v. *Mathiot*, 14 *Serg. & Rawle*, 214.

*Petriken* and *Valentine* for defendants in error.

The opinion of the court was delivered by

Gibson, C. J.--Retention of possession by the former owner of a chattel sold at sheriff's sale, is not an index of fraud, because the sale is not the act of the person retaining, but of the law; and because a judicial sale, being conducted by the sworn officer of the court, shall be deemed fair, till it is proved to be otherwise. It may like a judgment, however, be shewn' to be collusive and fraudulent in fact; but the presumption of the law is favorable to it in the first instance. A chattel thus purchased, then, may safely be left in the possession of the former owner on any contract of bailment that the law allows in any other case; and the question is not whether the purchase was fraudulent, but whether the contract with the former owner, vested a present ownership or a contingent interest, to take effect on the performance of a condition, to determine which, we must treat the contract as if it were made, not with the former owner, but with a stranger. As it appeared on the evidence, the case seemed to be that of a bailment, with a superadded agreement to vest the title in the bailee when he should pay a sum certain; and such an agreement is clearly consistent with public policy. No facility to fraudulent dealing is afforded by it, that is not afforded in the same degree, by a naked contract of bailment. Such a transaction includes two distinct, but consistent contracts—the one taking effect, if at all, when the other is spent. The contract of bailment preserves the ownership of the bailor during the particular relation created by it, and the contract of sale which supercedes it, transfers the title as soon as it is called into action, by payment of the price. An agreement to sell at a subsequent day is valid, when accompanied with present possession; but valid according to its terms, the property remaining exposed to the demands of the vendor's creditors in the mean time. All that remained, then, was for the jury to ascertain whether the sale were in its terms a present and absolute, or a future and contingent one. But the defendant insists that the acceptance of a note for the price was payment in point of law, whether the sale were absolute or not. The consequences of the act, however, depended on the intent of the parties, which was a matter to be determined by the jury. Undoubtedly, a vendor may take a bill or note on his own terms, and consequently without binding himself to treat it as payment. The inquiry, then, was whether the terms of the agreement were such as to pass the title on the delivery of the note, or only on payment of it. That was a question of fact, which was properly left to the jury. The other points submitted—that the property was left too long in the debtor's possession—that this was mingled with other trans-

(Myers *v.* Harvey.)

actions—and that the lease was in effect a bill of sale,—presented no definite questions of law on which the judge could charge at all, or, at most, none on which he could charge in the defendant's favor, and we think that in every respect the cause was properly put to the jury.

Judgment affirmed.